# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------

IN RE: KWOK,
    *Debtors*

------------------------------------------

GREENWICH LAND, LLC and HING CHI NGOK,
    *Appellants*,
      v.

LUC A. DESPINS, CHAPTER 11 TRUSTEE,
    *Trustee-Appellee.*

------------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BANKR. NO. 22-50073 (JAM)
*Chapter 11*


ADV. PRO. NO. 23-5005
CIVIL NO. 3:24-CV-1185 (KAD)


SEPTEMBER 11, 2025

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

      Greenwich Land, LLC ("Greenwich Land") and Hing Chi Ngok ("Ms. Ngok") (collectively, "Appellants") challenge the order of the Bankruptcy Court granting Chapter 11 Trustee Luc A. Despins' ("Trustee" or "Appellee") Motion for Summary Judgment (the "MSJ Order"), in which the Bankruptcy Court determined: (a) that Greenwich Land is the alter ego of the Individual Debtor Ho Wan Kwok (the "Debtor" or "Kwok"); (b) that the Debtor equitably owns Greenwich Land; and (c) that Greenwich Land's assets, as well as Ms. Ngok's membership interest in Greenwich Land, are property of the Debtor's bankruptcy estate (the "Estate"). *See Despins v. Greenwich Land, LLC, et al.*, No. 23-AP-5005 (Bankr. D. Conn. July 2, 2024), ECF No. 133. For the reasons set forth below, the MSJ Order is **AFFIRMED**.

**Facts and Procedural History**

The Court presumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the appeal.[1]

Greenwich Land

Greenwich Land is a Delaware LLC which owned, *inter alia*, property at 373 Taconic Road in Greenwich, Connecticut (the "Taconic Road Property"), which it purchased in February 2020. *See* MSJ Order at ¶¶ 1, 84. Greenwich Land has maintained an address at 162 East 64th Street, New York, New York, which has also been used by: the Debtor; the Debtor's attorney, Aaron Mitchell; the Debtor's adjudged alter egos, Golden Spring and HK USA; Hudson Diamond NY LLC ("HDNY"), and numerous other entities associated with the Debtor. *See id.* at ¶¶ 13–14.

Ms. Ngok is the Debtor's wife, and previously resided at the Taconic Road Property. Though Yanping "Yvette" Wang ("Ms. Wang"), Max Krasner ("Mr. Krasner"), and Daniel Podhaskie ("Mr. Podhaskie") have each, at times, served as officers of Greenwich Land, Ms. Ngok is presently the sole member of Greenwich Land. Nevertheless, Ms. Ngok has testified that she does not know the name of anyone who is or ever has been an officer of Greenwich Land; that she has never had any interaction with Ms. Wang in connection with Greenwich Land; and that she was not familiar with Mr. Podhaskie or Mr. Krasner. In addition to Greenwich Land, Ms. Wang, Mr. Krasner, and Mr. Podhaskie have occupied positions at other entities allegedly controlled by the Debtor, including his adjudged alter ego, Golden Spring.

Previously, the Debtor has invoked his Fifth Amendment rights against self-incrimination regarding: (a) whether Ms. Wang, Mr. Krasner, and Mr. Podhaskie were his employees and/or

---

[1] In the MSJ Order, the Bankruptcy Court set forth the undisputed facts after first ruling on Appellants' Motion to Strike, as well as the various evidentiary objections raised by both parties in their briefing on the Trustee's Motion for Summary Judgment. As discussed below, this Court affirms each of the various evidentiary rulings challenged by Appellants. Thus, the facts herein are derived from the undisputed facts set forth in the MSJ Order.

agents, and whether he has control over those individuals; and (b) whether he beneficially owns and/or controls Greenwich Land. *Id.* at ¶¶ 11–12, 15–16.

<u>Greenwich Land's Financial Activity</u>

Ms. Ngok has admitted that she did not participate directly in any banking or other financial transactions of Greenwich Land, and indeed, does not know at which banks Greenwich Land has or had bank accounts, or the source(s) of the funds in those accounts. *Id.* at ¶¶ 17–18.

Nevertheless, Ms. Ngok, as well as Mr. Krasner, Mr. Podkaskie, Ms. Ngok's daughter ("Ms. Guo"), and even the Kwok family chef, used debit cards in their names under Greenwich Land's Bento for Business bank account (the "Bento Account"). *See id.* at ¶ 21. Additionally, though Mr. Krasner resigned from his position as Vice President of Greenwich Land in November 2022, he continued to use his Bento Account debit card for several months thereafter. *See id.* at ¶¶ 24–25. Ms. Ngok does not know why Ms. Guo and the family chef were issued cards for the Bento Account despite not being employees, officers, directors, managers, or members of Greenwich Land; or why Mr. Krasner spent money from the Bento Account after he resigned. *Id.* at ¶¶ 23, 26.

In September 2020, Greenwich Land opened a bank account at The Bank of Princeton (the "BP Account"). *Id.* at ¶ 30. For more than a year thereafter, the BP Account received and/or effectuated transfers totaling tens of millions of dollars to/from: Savio Law LLC ("Savio Law"); ACA Capital Group Ltd. ("ACA Capital"); Sherry-Lehman Inc.; the Bento Account; an account at First County Bank held in Ms. Ngok's name; Lamp Capital LLC ("Lamp Capital"); and Greenwich Land's Capital One Bank account. *See id.* at ¶¶ 31, 32, 36–39, 41. Ms. Ngok has testified that she does not know why the foregoing transfers to/from Savio Law, ACA Capital, and Lamp Capital were received. *Id.* at ¶¶ 33, 40. Moreover, the Debtor has asserted his Fifth

Amendment rights against self-incrimination regarding whether he is the beneficial owner of and/or exclusively controls ACA Capital.  *Id.* at ¶ 34.

<u>Greenwich Land's Real Estate Transactions</u>

On behalf of Greenwich Land, Mr. Krasner executed sale agreements and other closing documents related to Greenwich Land's purchase of the Taconic Road Property, as well as the purchase (and subsequent sale) of a property located at 33 Ferncliff Road in Cos Cob, Connecticut (the "Ferncliff Property").

*The Ferncliff Property*

On or about August 2019, Greenwich Land purchased the Ferncliff Property.  *See id.* at ¶ 46.  Such purchase was funded via a $1.5 million transfer from HDNY's Capital One account to Greenwich Land's Capital One account.  *See id.*

On September 3, 2019, Greenwich Land, through Ms. Krasner, leased the Ferncliff Property to Dinggang Wang ("Mr. Wang").  *Id.* at ¶ 56.  On September 24, 2019, a waiver agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, which waived Mr. Wang's rental obligation in return for Mr. Wang providing complimentary "professional services to assist Greenwich [Land] and its affiliates with various projects including, but not limited to, media consulting."  *Id.* at ¶ 58.

On May 6, 2021, the Delaware Superior Court issued an out-of-state subpoena to be served on Greenwich Land by the Debtor's largest creditor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), instructing Greenwich Land that it was forbidden to dissipate its assets.  *Id.* at ¶ 62.  On February 15, 2022, the Debtor filed his voluntary Chapter 11 petition with the Bankruptcy Court. *Id.* at ¶ 63.

On April 28, 2022, Greenwich Land sold the Ferncliff Property, and the proceeds therefrom (the "Ferncliff Proceed") were transferred to Greenwich Land's account at First Bank of Greenwich ("First Bank"), which Mr. Krasner had opened just a few weeks prior. *See id.* at ¶¶ 64–66. Over the next 11 months, the Ferncliff Proceeds were transferred to the Bento Account, Gypsy Mei Food Services LLC ("Gypsy Mei"), the Mar-a-Lago Club, and various law firms representing the Debtor.

Ms. Ngok: (a) did not directly participate in the purchase and sale of the Ferncliff Property; (b) does not know the source(s) of the funds used to purchase the Ferncliff Property; (c) is not familiar with Mr. Wang and his tenancy at the Ferncliff Property; and (d) indeed, never lived at the Ferncliff Property and was unable to recognize a photo of it. *See id.* at ¶¶ 43, 45, 55.

Attorney Margaret Conboy is a partner at Whitman Breed Abbot & Morgan ("Whitman Breed"), the law firm that represented Greenwich Land, Golden Spring, and HDNY, as local counsel, with respect to the purchase and sale of the Ferncliff Property. *Id.* at ¶ 53. In that capacity, Attorney Conboy referred to the Debtor as her client, received instructions from Mr. Krasner, never communicated with Ms. Ngok, and was otherwise advised that the Debtor was making key decisions regarding real estate transactions. *See id.* at ¶ 54.

*The Taconic Road Property*

On or about February 2020, Greenwich Land purchased the Taconic Road Property. *Id.* at ¶ 84. Such purchase was funded via: (a) a $500,000.00 transfer from HDNY to Greenwich Land's Capital One account; (b) a $2 million transfer from Saraca Media Group, Inc. ("Saraca") to Greenwich Land's Capital One account; and (c) a $2.3 million transfer from HDNY to Lamp Capital's Capital One account. *See id*. Ms. Ngok does not know why, in February 2020, HDNY and Saraca transferred funds to Greenwich Land. *Id.* at ¶ 85. According to Emile de Neree ("Mr.

de Neree"), the buyer-side real estate broker in connection with the purchase of the Taconic Property, the Debtor, *inter alia*: made the decision to purchase the Taconic Road Property under Greenwich Land; set the offer price; and arranged for the details of the transaction to be handled by Mr. Krasner.  *See id.* at ¶ 87.  At the time of the MSJ Order, Ms. Ngok resided at the Taconic Road Property, and previously, the Debtor had used the Taconic Road Property as one of his primary residences.  *See id.* at ¶ 89.

HDNY

Notwithstanding that Ms. Guo—the Debtor and Ms. Ngok's daughter—is the indirect record owner of HDNY, Ms. Ngok has never heard of HDNY.  *Id.* at ¶ 47.  Moreover, Ms. Guo asserted her Fifth Amendment rights against self-incrimination regarding whether the Debtor owned and controlled HDNY and directed the aforementioned $1.5 million transfer to Greenwich Land for the purchase of the Ferncliff Property, as well as the $2.8 million worth of HDNY transfers associated with the purchase of the Taconic Road Property.  *Id.* at ¶¶ 51–52, 86.  Ms. Wang, Mr. Krasner, and Mr. Podhaskie are or were authorized signatories of HDNY.  *Id.* at ¶ 50.

The Adversary Proceeding

On March 27, 2023, the Trustee commenced the underlying Adversary Proceeding seeking: (1) a declaratory judgment that Greenwich Land is the Debtor's alter ego, and that the Debtor— not Ms. Ngok—is the equitable owner of Greenwich Land; and (2) ordering turnover of Greenwich Land's assets and membership interest to the Trustee.  *See* Complaint, Adv. Proc., ECF No. 1. Though the Trustee's underlying alter ego claim arises under Delaware law, the Adversary Proceeding seeks declaratory relief pursuant to Sections 541, 542, and 544 of the Bankruptcy Code.  *See generally id.*  In support of its claims, the Trustee asserts, *inter alia*, that:

a. Greenwich Land was managed by the Debtor's agents and/or employees, who comprised, with Defendant Ngok, all the officers of Greenwich Land (which currently has no officers at all).

b. The purported owner of Greenwich Land, Defendant Ngok, knows nothing about Greenwich Land and was never meaningfully involved in its affairs.

c. Greenwich Land uses the same address as the Debtor and his other shell companies.

d. Greenwich Land and its assets were funded by other Debtor shell companies.

e. The Debtor was the decision-maker directing Greenwich Land's purchases and sales of real estate, as recognized by the attorneys and brokers working on such transactions, who took direction from the Debtor through his agent and/or employee Max Krasner.

f. The Debtor uses Greenwich Land's principal asset as his residence and Greenwich Land pays the Debtor's expenses in connection with his residence there.

*See id.* at 24–25.

On October 10, 2023, the Trustee filed a Motion for Summary Judgment as to both of his claims. MSJ, Adv. Proc., ECF No. 77. On January 5, 2024, Appellants filed a Motion to Strike the various exhibits attached to the Trustee's summary judgment reply brief (the "Reply Documents"). Motion to Strike, Adv. Proc., ECF No. 122. On January 9, 2024, the Bankruptcy Court held a hearing on the Motion for Summary Judgment and the Motion to Strike, and thereafter took both motions under advisement.

The MSJ Order

On July 2, 2024, the Bankruptcy Court issued the MSJ Order. *See* MSJ Order, Adv. Proc., ECF No. 133. At the outset, the Bankruptcy Court resolved various evidentiary objections asserted by both parties, as well as Appellants' Motion to Strike.[2]

---

[2] The Bankruptcy Court denied Appellants' Motion to Strike, finding that it had broad discretion to consider argument and evidence first introduced on reply, and that the Reply Documents themselves were responsive to the evidentiary objections raised in Appellants' opposition, and did not otherwise constitute unfair surprise. *See* MSJ Order at 8–9.

*Evidentiary Issues*

The Bankruptcy Court first overruled Appellants' objection, pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure, to the Declaration of Douglass Barron (the "Barron Declaration"), which was submitted in connection with the Trustee's initial summary judgment papers. *Id.* at 10. Appellants argued that Attorney Barron lacked personal knowledge regarding the exhibits annexed to the Barron Declaration, and that the Barron Declaration does not contain a statement that it is sworn under penalty of perjury. The Bankruptcy Court was unpersuaded and overruled the objection, insofar as: (a) the Barron Declaration is neither a primary authentication declaration nor a declaration about the factual substance of the Trustee's exhibits, and is instead merely a declaration that such exhibits are true and correct copies of the documents included therein; and (b) even to the extent the Barron Declaration lacks a sworn statement that its contents are true and correct under penalty of perjury, any such defect was cured through the subsequent declaration submitted in connection with the Trustee's reply brief (the "Supplemental Barron Declaration"). *Id.*

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Appellants also objected to the admissibility of certain evidence relied on by the Trustee, as follows: (1) the Trustee failed to authenticate various exhibits; (2) the deposition testimony of Attorney Conboy is subject to attorney-client privilege; (3) the deposition testimony of both Attorney Conboy and Mr. de Neree was made without personal knowledge of the relevant facts; (4) the information relating to Greenwich Land's financial activities is irrelevant; (5) the Debtor and Ms. Guo's invocation of the Fifth Amendment is inadmissible at summary judgment; and (6) the past determinations of the Bankruptcy Court in the jointly administered Chapter 11 cases and related adversary proceedings

are inadmissible hearsay.  The Bankruptcy Court overruled each of these objections.  Appellants challenge these evidentiary rulings on appeal.

First, regarding authentication, the Bankruptcy Court found that the challenged exhibits are each admissible insofar as they are either: (a) business records authenticated by the various declarations submitted with the Trustee's reply; (b) Greenwich Land's own documents; (c) domestic public documents with certifications under seal by public officials; (d) acknowledged documents within the meaning of Fed. R. Evid. 902(8); (e) deposition transcripts, bank records, corporate records, and/or contractual documents authenticated through the Supplemental Barron Declaration; (f) judicially noticeable court filings; or (g) a declaration of the Debtor with the distinctive characteristics of a declaration and otherwise authenticated under Fed. R. Evid. 901(b)(4).  *Id.* at 12–14.

Second, the Bankruptcy Court concluded that Appellants had failed to meet their burden of establishing an attorney-client privilege as to Attorney Conboy's deposition testimony.  *See id.* at 15–16.  More specifically, Judge Manning observed that the purportedly privileged testimony was merely to identify Greenwich Land as Attorney Conboy's client, as opposed to testimony regarding legal advice and/or other confidential communications between Attorney Conboy and Greenwich Land.  *Id.*  The Bankruptcy Court further emphasized that Attorney Conboy also represented Golden Spring and HDNY in connection with the purchase and sale of the Ferncliff Property, and that Appellants advanced no argument as to why sharing communications with Golden Spring and HDNY would not defeat their assertion of privilege in any event.  *Id.* at 16.

Third, regarding personal knowledge, the Bankruptcy Court found that the Trustee offered Attorney Conboy and Mr. de Neree's testimony not as evidence that the Debtor was a record member or officer of Greenwich Land or as evidence as to the source of the funds used to purchase

the Ferncliff Property and/or the Taconic Road Property, but rather, as direct evidence of the Debtor's alleged use and control of Greenwich Land in relation to these real estate transactions.

Fourth, the Bankruptcy Court determined that the Trustee's evidence was relevant, and its probative value was "not substantially outweighed by any counterbalance considered by courts." *Id.* at 18 (citing Fed. R. Evid. 403).

Fifth, the Bankruptcy Court overruled Appellants' objection as to any adverse inference arising from the Debtor and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination when questioned about Greenwich Land and its ownership, financial transactions, etc. *Id.* at 18–19. While the Bankruptcy Court acknowledged that an "adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment," Judge Manning concluded that the Debtor and Ms. Guo's invocations of the Fifth Amendment nevertheless had limited relevance because the substance of the testimony of Ms. Ngok, Ms. Conboy, and Mr. de Neree, were largely undisputed by Ms. Guo and the Debtor.

Sixth, the Bankruptcy Court overruled Appellants' objection to the Court's consideration of its prior determinations that Golden Spring and HK USA are alter egos of the Debtor, and that Saraca is related to the Debtor's media ventures. *See id.* at 21. Although Appellants challenged these determinations under the law of the case doctrine, the objection was overruled because Appellants did not adduce any evidence disputing these prior determinations despite having the opportunity to undertake discovery in the Adversary Proceeding. *Id.* And given the lack of contrary evidence, the Bankruptcy Court, within its discretion, determined that these prior rulings were properly relied upon as law of the case. *Id.*

The Bankruptcy Court also resolved certain of the Trustee's evidentiary objections. As relevant here, the Bankruptcy Court sustained the Trustee's objection to Appellants' reliance on

Ms. Ngok's prior Rule 2004 testimony that her son, Qiang Guo ("Mr. Guo"), created Greenwich Land and purchased the Ferncliff Property and Taconic Road Property for Ms. Ngok.[3]  *Id.* at 22–23.  Judge Manning observed that Ms. Ngok's prior testimony directly conflicts with the testimony given by Ms. Ngok in the Adversary Proceeding, namely: that Ms. Ngok did not know the source of the funds used to purchase the Ferncliff Property and Taconic Road Property; did not know why the entities that transferred the funds did so; and did not know who would know why the entities transferred the funds.  *See id.*  Judge Manning further relied on Appellants' failure to list Mr. Guo in their initial disclosures, as well as their responses to the Trustee's interrogatories, which indicate that Appellants had no knowledge of the source of funds used to purchase the Ferncliff Property and Taconic road Property.  *Id.* at 23.  As such, the Bankruptcy Court declined to permit Appellants to "revive [Ms. Ngok's prior testimony] at the eleventh hour, after discovery has closed, in order to prevent summary judgment."  *Id.*

    *Summary Judgment*

    Having resolved the foregoing preliminary issues, the Bankruptcy Court set forth the undisputed facts, and turned to the merits of the Trustee's two claims.

    As to the Trustee's alter ego claim, the Bankruptcy Court determined as a threshold matter that Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring an outsider reverse veil-piercing action on behalf of creditors at large.  *Id.* at 45.  From there, applying Delaware alter ego/reverse veil piercing law, the Bankruptcy Court concluded that "a reasonable jury would find that the Debtor so dominated and controlled Greenwich Land such that Greenwich Land had no separate economic existence from the Debtor," based on the following:

---

[3]  The MSJ Order also resolved several additional evidentiary objections raised by the Trustee, *See* MSJ Order at 22–24.  However, to the extent Appellants do not challenge these rulings, the Court does not discuss each of them herein.

(a) Greenwich Land being capitalized only by funding from entities related to the Individual Debtor and its capital similarly being transferred to such entities without business purpose; (b) Greenwich Land's bank accounts being used to fund personal spending of the Individual Debtor, his family, and his associates, including those who were never or were only formerly officers of Greenwich Land, unrelated to its purported business purpose of owning real estate in Greenwich, Connecticut; (c) the Individual Debtor's control over the purchase, use, and sale of the Ferncliff Property; (d) the Individual Debtor's control over the purchase of the Taconic Property and his residence therein; (e) Greenwich Land being staffed by known associates and employees of the Individual Debtor and sharing its business address with numerous entities related to the Individual Debtor; (f) the disregard for corporate formalities demonstrated by the foregoing; and (g) the extent to which Greenwich Land is merely a façade for the Individual Debtor, as demonstrated by the foregoing.

*Id.* at 46.

The Bankruptcy Court further rejected Appellants' arguments in opposition, which were principally premised on their overruled evidentiary objections. *Id.* at 46–47.

Next, regarding the Trustee's beneficial ownership claim, the Bankruptcy Court applied Delaware beneficial ownership law and evaluated the factors set forth in *In re Dordevic*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023) ("*Dordevic*"). *Id.* at 58. Specifically, the Bankruptcy Court found that: (a) the Debtor dominates and controls Greenwich Land, for the reasons set forth in connection with the foregoing alter ego analysis; (b) for substantially the same reasons, Greenwich Land's corporate form frustrates collection efforts; (c) Ms. Ngok is not the source of Greenwich Land's assets, as evidenced by her complete lack of knowledge regarding, and responsibility for, the funding of Greenwich Land; and (d) Ms. Ngok unquestionably has a close relationship with the Debtor. *See id.* at 59. Accordingly, the Bankruptcy Court concluded that four out of the five *Dordevic* factors support the conclusion that the Debtor equitably owns Greenwich Land. *Id.* at 59–60. Once again, the Bankruptcy Court rejected Appellants' arguments in opposition, insofar as they were premised on overruled evidentiary objections. *Id.* at 58–59.

In light of the foregoing findings, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment, having determined that the Trustee was entitled to judgment as a matter of law that, pursuant to applicable Delaware law and Sections 541, 542, and 544 of the Bankruptcy Code: (1) Greenwich Land is the alter ego of the Debtor; (2) the Debtor equitably owns Greenwich Land; and accordingly, (3) all Greenwich Land's assets, as well as Ms. Ngok's membership interest in Greenwich Land, are property of the Estate. *Id.* at 60. This appeal timely followed.[4]

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Margulies*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).

---

[4] On July 12, 2024, Appellants filed a Motion to Stay Pending Appeal. Adv. Proc., ECF No. 139. On August 12, 2024, Appellants withdrew their Motion to Stay in light of the Bankruptcy Court's Consent Order Resolving Motion for Stay Pending Appeal and Enforcing Summary Judgment, wherein, by agreement of the parties, *inter alia*, Ms. Ngok would vacate the Taconic Road Property and turn over exclusive possession thereof to the Trustee for the benefit of the Estate. *See* Adv. Proc., ECF No. 166. Consistent with the Bankruptcy Court's ensuing Order Authorizing and Approving Sale of the Greenwich Property, in the Debtor's main bankruptcy case, on October 18, 2024, the Taconic Road Property was sold, and the proceeds therefrom distributed to the Trustee. *See In re: Kwok*, No. 22-BK-50073, ECF No. 3690.

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotations marks omitted). A bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003). "In addition, the Second Circuit has explained, an evidentiary ruling that is an abuse of discretion is, however, only reversible if it also affects a party's substantial rights." *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 582 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020) (citing *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999)).

**Discussion**

On appeal of the MSJ Order, Appellants argue that: (1) the Bankruptcy Court erred in its threshold evidentiary rulings, to include its determinations regarding law of the case and the Debtor and Ms. Guo's invocations of the Fifth Amendment; (2) without the evidence and other considerations upon which the Bankruptcy Court wrongly relied, the Trustee cannot meet his burden on summary judgment; and (3) regardless, the evidentiary record fails to establish that Greenwich Land is the Debtor's alter ego, or that the Debtor equitably owns Greenwich Land. In response, the Trustee argues that: (a) the Bankruptcy Court did not abuse its discretion in ruling

on the parties' threshold evidentiary objections; and (b) the Bankruptcy Court did not err in concluding, on the basis of the undisputed facts, that Greenwich Land is the Debtor's alter ego and that the Debtor equitably owns Greenwich Land.  The Court agrees with the Trustee.[5]

<u>Threshold Findings</u>

Before the Court can evaluate the Bankruptcy Court's determinations on the merits, it must first assess Judge Manning's threshold findings.  At the outset, and prior to setting forth the undisputed facts upon which the summary judgment determination was made, the Bankruptcy Court overruled various of Appellants' objections regarding: (1) the admissibility of the Trustee's evidence; (2) the Trustee's purported application of *res judicata* and his reliance on prior determinations made by the Bankruptcy Court in other adversary proceedings related to the Debtor's broader Chapter 11 case; and (3) the Trustee's request that the Bankruptcy Court consider the Debtor and Ms. Guo's invocations of their Fifth Amendment right against self-incrimination. The Bankruptcy Court also sustained the Trustee's objection to Appellants' reliance on Ms. Ngok's prior, conflicting Rule 2004 testimony. The foregoing evidentiary rulings must be reviewed under an abuse of discretion standard, *see Manley*, 337 F.3d at 247, and for the reasons discussed below, the Court finds that the Bankruptcy Court did not abuse its discretion in any of these threshold determinations.

---

[5] Appellants further contend that the Bankruptcy Court does not have constitutional authority to enter a final judgment in this case, and that, in nevertheless issuing the MSJ Order and "divest[ing] Mrs. [Ngok] of her home," "the Bankruptcy Court usurped the District Court's role in ruling on the motion to withdraw the reference and deprived Appellants of their constitutional right to have the action decided in an Article III court." Appellant Br. at 24.  This argument is unpersuasive for several reasons.  As an initial matter, the Court has now denied Appellants' Motion for Withdrawal of the Reference, and therein concluded that the Trustee's claims in this Adversary Proceeding are "core." *See In re Kwok*, Case No. 3:23-CV-62 (KAD), ECF No. 26, at 6–7.  The Court additionally indicated that it would, in due course, review the instant appeal *de novo*. And indeed, the Court has herein done so, where appropriate. Accordingly, any genuine concerns regarding Appellants' purported right to have this action decided in an Article III court are misplaced, and indeed, a "red herring."  *See* Trustee Br. at 42.  Additionally, the Court observes that on August 20, 2024, Appellants voluntarily withdrew their Motion to Stay Pending Appeal and jointly stipulated to the enforcement of the MSJ Order.  As such, Appellants' complaints regarding the ensuing sale of the Taconic Road Property appear to have resolved by agreement.

*Evidentiary Rulings*

Having reviewed each of the evidentiary rulings below, this Court finds that the Bankruptcy Court properly exercised its discretion when overruling Appellants' objections to the Trustee's evidence on authenticity, privilege, personal knowledge, and/or relevance grounds.

As to authenticity, though Appellants are correct that evidence relied upon at summary judgment must be *presentable* in an admissible form at trial, *see* Fed. R. Civ. P. 56(c)(2), the Bankruptcy Court accurately observed that "material relied on at summary judgment need not be admissible *in the form presented*. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *See* MSJ Order at 11 (quoting *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (*per curiam*)). And indeed, the Bankruptcy Court proceeded to set forth measured explanations as to why each of the contested exhibits would or could be presented in an admissible form at trial. *See* MSJ Order at 12–14. On appeal, Appellants do not challenge the Bankruptcy Court's assessment as inconsistent with *Smith* or the Federal Rules of Evidence. Rather, they argue that the Barron Declaration was insufficient to authenticate the Trustee's exhibits, and otherwise assert that "the Trustee made no showing that the documents would be admissible at trial." *See* Appellant Br. at 33–34. But these arguments are misplaced. Indeed, insofar as the Barron Declaration was neither a primary authentication declaration nor a declaration about the factual substance of the Trustee's exhibits, Mr. Barron's personal knowledge (or lack thereof) regarding the creation or content of those exhibits is immaterial to their authenticity. Beyond that, Appellants offer only conclusory assertions as to the inadmissibility of the Trustee's exhibits, which are entirely unpersuasive, given the Bankruptcy Court's thorough and well-reasoned analysis.

Next, the Court has little difficulty concluding that the Bankruptcy Court did not abuse its discretion in finding that Appellants had not met their burden of establishing an attorney-client privilege in connection with Attorney Conboy's testimony. Indeed, Appellants failed to cite any purportedly privileged communications in Attorney Conboy's testimony regarding Greenwich Land. *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice"). On appeal, Appellants do not meaningfully argue otherwise.[6]

Lastly, the Court concludes that the Bankruptcy Court properly exercised its discretion in overruling Appellants' challenge to Mr. de Neree and Attorney Conboy's personal knowledge of Greenwich Land's ownership, funding, etc., as well as the relevance of their testimony regarding Greenwich Land's real estate transactions. As they did in the Adversary Proceeding, Appellants misconstrue the purpose for which the testimony of Mr. de Neree and Attorney Conboy was offered. This testimony was not, as Appellants suggest, offered to establish that the Debtor was a record member or officer of Greenwich Land, or to establish the source of the funds used to purchase the Ferncliff Property and/or the Taconic Road Property. Rather, the testimony was put forward as evidence of the Debtor's alleged use and control of Greenwich Land, based upon Mr. de Neree and Attorney Conboy's first hand observations of Greenwich Land's real estate transactions and the Debtor's substantial involvement therein, as well as Ms. Ngok's lack of

---

[6] Beyond their conclusory—and thus, unpersuasive—argument that "[t]he Court should disregard the deposition testimony of [Attorney] Conboy, because she was counsel for Greenwich Land and any conversations with Greenwich Land are privileged," Appellants only contend that "it is [Greenwich Land]'s privilege and the Trustee could not accomplish a waiver by deposing Conboy outside the presence of [Greenwich Land]." *See* Appellant Br. at 13, 37. But any notion of a privilege waiver ignores Appellants' threshold burden of establishing that the attorney-client privilege applies in the first instance, which they have not met. Moreover, the Court observes that in their reply brief on appeal, Appellants fail to address the Trustee's arguments on this issue.

involvement.  The Bankruptcy Court did not abuse its discretion in permitting this very relevant and probative testimony on summary judgment.

### Law of the Case

Appellants also challenge the Bankruptcy Court's application of the law of the case doctrine; specifically, Judge Manning's reliance in this case on her own determinations in other related adversary proceedings that Golden Spring and HK USA are alter egos of the Debtor, and that Saraca is related to the Debtor's media ventures. The Court is not persuaded that the Bankruptcy Court abused its discretion in this regard, much less "flipped the law of the case doctrine on its head," as Appellants assert.  *See* Appellant Br. at 25.  "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."  *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).  As Appellants concede, courts have discretion when deciding whether or not to apply the law of the case doctrine, which is broadly regarded as "an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Moreover, as relevant here, "courts have held that the law-of-the-case doctrine 'applies to different adversary proceedings filed within the same main bankruptcy case.'"  *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) (citing *In re Moise*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017)); *In re Montagne*, No. 08-1024, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.")).  Further, Appellants do not dispute, as observed by Judge Manning in the MSJ Order, that during the discovery period in this Adversary Proceeding,

Appellants failed to challenge the factual basis for the Bankruptcy Court's prior findings as to

Golden Spring, HK USA, and Saraca.  Thus, Appellants *did* have a full and fair opportunity to

litigate the issues decided in prior adversary proceedings; yet, they chose not to do so.  For these

reasons, the Bankruptcy Court's application of the law of the case was not an abuse of discretion.[7]

*See In re Sims*, 534 F.3d at 132.

> *Fifth Amendment*

Appellants claim that the Bankruptcy Court improperly drew adverse inferences from the

Debtor and Ms. Guo's invocations of the Fifth Amendment, and relied on such inferences to make

ultimate findings of fact in support of the MSJ Order.  *See* Appellant Br. at 32.  Once again,

Appellants mischaracterize the MSJ Order.  The Bankruptcy Court acknowledged that it is

improper at summary judgment to draw an adverse inference on the basis of an invocation of Fifth

Amendment right against self-incrimination. *See* MSJ Order at 18; *see also Stichting ter

Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v.

Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005).  And indeed, when considering the Debtor and Ms.

Guo's invocations of the Fifth Amendment, Judge Manning explicitly did not draw any such

inferences.  Rather, she observed that the invocations had "limited relevance," and were used only

for the purpose of establishing that the Debtor and Ms. Guo *did not dispute* the relevant testimony

of Ms. Ngok, Attorney Conboy, and Mr. de Neree regarding, *inter alia*, the Debtor's dominion and

control over Greenwich Land (and Ms. Ngok's lack thereof).  *See* MSJ Order at 18–19.  The

Bankruptcy Court did not, as Appellants suggest, rely on the invocations as evidence (directly or

by inference) that the Debtor controls and/or beneficially owns Greenwich Land, HDNY, or ACA

---

[7]  To the extent the Bankruptcy Court took judicial notice of its prior findings as to Golden Spring, HK USA, and Saraca not for the truth of those determinations, but merely for the fact that such findings were made, Appellants do not appear to have any objection.

Capital; that the Debtor has control over Ms. Wang, Mr. Krasner, and Mr. Podkaskie; or that the Debtor directed the transfer of funds to/from Greenwich Land in connection with various real estate transactions.[8] As such, the Bankruptcy Court did not abuse its discretion in considering the Debtor and Ms. Guo's invocations of the Fifth Amendment for the limited purpose identified in the MSJ Order.

### Rule 2004 Testimony

In assessing the record evidence, the Bankruptcy Court declined to consider Ms. Ngok's Rule 2004 testimony from a prior unrelated adversary proceeding that her son, Mr. Guo, created Greenwich Land and purchased the Ferncliff Property and Taconic Road Property for Ms. Ngok. This prior testimony conflicted with Ms. Ngok's testimony in this Adversary Proceeding. Although noted in their brief on appeal, Appellants advance no argument that the Bankruptcy Court erred in this regard. However, in their reply brief, Appellants explicitly argue that the Bankruptcy Court erred "in not considering [Ms. Ngok]'s prior testimony regarding her son." Appellant Reply at 8–9. While it is not generally permissible to raise issues for the first time in a reply brief, *see Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993), the Court concludes that the Bankruptcy Court did not abuse its discretion in sustaining the Trustee's objection to Ms. Ngok's prior testimony. *See Manley*, 337 F.3d at 247.

---

[8] Appellants further claim that the Debtor and Ms. Guo's invocations of the Fifth Amendment should not be considered insofar as the Debtor and Ms. Guo had no personal knowledge of the relevant issues. This argument is frivolous. Indeed, the summary judgment record is replete with evidence indicating, *inter alia*, that the Debtor had extensive awareness of and involvement in Greenwich Land's real estate transactions, and had close relationships with all of Greenwich Land's nominal owners, including his own wife. The record evidence also indicates that entities owned and/or associated with Ms. Guo received and/or transferred funds to Greenwich Land, and that Ms. Guo herself spent money from Greenwich Land's Bento Account. Thus, any suggestion that the Debtor and Ms. Guo lacked "personal knowledge of the relevant issues" is absurd.

Alter Ego

Turning to the merits, the Court finds that the Bankruptcy Court did not err in concluding as a matter of law that Greenwich Land is the Debtor's alter ego.  On appeal, Appellants do not contest the Bankruptcy Court's reliance on applicable Delaware law or the general framework it sets out regarding alter ego determinations.  Rather, they broadly challenge the sufficiency of the evidence adduced on summary judgment.   In response, the Trustee argues that the record evidence supports the Bankruptcy Court's alter ego determination, and that Appellants have otherwise "proffered no evidence that might come close to establishing a genuine dispute of material fact preventing summary judgment on the Trustee's claims."  Trustee Br. at 49.  The Court agrees with the Trustee.

*Applicable Law*

Under Delaware law, alter ego or veil piercing is a doctrine of equity, and "has been described as a form of 'derivative liability.'"  *In re Tronox Inc.*, 549 B.R. 21, 43–44 (S.D.N.Y. 2016) (citing *United States v. Bestfoods*, 524 U.S. 51, 65 (1998)).[9]  Alter ego entails two inquiries: (1) whether the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged alter ego that the corporate entity and its alter ego are, in fact, a single economic unit; and (2) whether the corporate form to be disregarded causes fraud or some similar injustice. *See In re Firestar Diamond, Inc.*, 654 B.R. 836, 875 (Bankr. S.D.N.Y. 2023) (applying Delaware law).  In assessing the alter ego's dominion and control over the corporate entity, courts consider a number of factors—none of which are dispositive on their own—including: (i) whether the company was adequately capitalized; (ii) whether the company was solvent; (iii) whether corporate

---

[9] "The terms 'alter ego theory' and 'piercing the corporate veil' are used interchangeably in Delaware law."  *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 n. 32 (Del.Ch. Dec. 23, 2008) (citation omitted).

formalities were observed; (iv) whether the dominant shareholder siphoned company funds; and (v) whether, in general, the company functioned as a facade for the dominant shareholder.  *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706–07 (Del. Ch. 2021) (internal citations omitted); *see also Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010).  As to the fraud or similar injustice component, the Trustee "need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an 'overall element of injustice or unfairness.'"  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).  Likewise, the Trustee "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used."  *Id.* at 177.

Additionally, in specifically considering whether to reverse pierce the corporate veil (as the Trustee asserts here), courts consider both the traditional veil piercing factors discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted.  *See Manichaean*, 251 A.3d at 714–15.

*The Debtor and Greenwich Land*

Applying Delaware's alter ego framework, the Court concludes that there is no genuine issue of material fact that Greenwich Land is the alter ego of the Debtor, and that reverse veil piercing is appropriate under the circumstances.  Significant to the Court's conclusion are the following undisputed facts:

- Ms. Ngok, the nominal owner, had no knowledge of Greenwich Land, its officers, or its operations, to include Greenwich Land's financial transactions and bank accounts;
- By contrast, the Debtor funded and otherwise controlled Greenwich Land's purchase of both the Ferncliff Property and the Taconic Road Property, as well as Greenwich Land's sale of the Ferncliff Property and the proceeds therefrom, which were subsequently used for various purposes unrelated to Greenwich Land's purported business;
- Mr. Krasner, as an officer of Greenwich Land, operated as the Debtor's agent, and was heavily involved in Greenwich Land's real estate transactions;

- Mr. Krasner, as well as Ms. Wang and Mr. Podhaskie, have held positions at other entities associated with the Debtor, including his adjudged alter ego, Golden Spring;
- Greenwich Land shares its business address with other entities associated with the Debtor, including his adjudged alter ego, Golden Spring;[10]
- Greenwich Land's assets were used to benefit entities and/or persons other than itself;
- Greenwich Land received large transfers of funds to finance its real estate transactions, including from entities and/or bank accounts tied to the Debtor, his family members, and his associated entities; and
- The Debtor, as well as his associates, family members, and associated entities, all siphoned funds from Greenwich Land, including through luxury purchases, counsel fees, and other expenses unrelated to Greenwich Land's purported business purposes.

In the absence of any countervailing evidence, these undisputed facts establish that each of the *Manichaean* factors favors reverse veil piercing, and that an overall element of injustice or unfairness is present here insofar as Greenwich Land was used to shield the Debtor's assets from his creditors. Additionally, there are no innocent shareholders of Greenwich Land who will be adversely impacted by reverse veil piercing, nor would reverse veil piercing otherwise unfairly harm the legitimate expectations of Greenwich Land's creditors. Rather, to the extent the Taconic Road Property has been brought into the Estate, the Debtor's creditors will gain additional protection through reverse veil piercing. In short, the Debtor unquestionably exercised dominion and control over Greenwich Land; and this dominion and control contributed to shielding Greenwich Land's assets from the Debtor's creditors and the Estate.

Appellants take issue with whether the individual facts relied upon support the Bankruptcy Court's conclusion. In essence, Appellants ask the Court to evaluate each fact in a vacuum. But this construction of Delaware alter ego law is wrong. Indeed, given the equitable nature of alter

---

[10] Though determined subsequent to the MSJ Order, the Court nevertheless observes that HDNY—whose $1.5 million transfer to Greenwich Land's Capital One account funded the purchase of the Ferncliff Property—has now also been adjudged as the Debtor's alter ego, and shares the same business address. *See Despins v. Lamp Capital LLC, et al.*, No. 23-AP-5023 (Bankr. D. Conn. June 30, 2025), ECF No. 138. An appeal of such determination is presently pending before this Court. *See In re Kwok*, No. 3:25-CV-1131 (KAD).

ego claims, courts apply a holistic approach to assessing whether the *Manichaean* factors, *in combination*, demonstrate that the corporate entity and its alter ego are, in fact, a single economic unit.  *See NetJets Aviation, Inc.*, 537 F.3d at 177 ("numerous factors come into play when discussing whether separate legal entities should be regarded as alter egos, . . . and the legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over-nor under-inclusive.") (citations and alterations omitted).  Standing alone, Ms. Ngok's lack of control over Greenwich Land's financial transactions, or Greenwich Land's shared business address with Golden Spring, might be insufficient to support reverse veil piercing.  Likewise, the involvement of Greenwich Land's officers (*e.g.*, Mr. Krasner, Ms. Wang, and Mr. Podhaskie) with other Debtor-associated entities does not itself demonstrate that the Debtor dominated Greenwich Land.  Nevertheless, *in combination*, these (and numerous other) undisputed facts fit neatly within the framework articulated by the Delaware Chancery Court in *Manichaean*.

In light of the foregoing, the Bankruptcy Court's order granting summary judgment on the Trustee's first claim is AFFIRMED.

<u>Beneficial Ownership</u>

The Court next concludes that the Bankruptcy Court properly concluded as a matter of law that the Debtor is the beneficial owner of Greenwich Land.  On this issue, in addition to incorporating their above-discussed (and rejected) arguments, Appellants principally argue that the Bankruptcy Court erred in its reliance on, and application of, the *Dordevic* factors.  Appellants additionally argue that the Bankruptcy Court "conducted no independent analysis of [the *Dordevic*] factors."  The Court is not persuaded.

As an initial matter, the Bankruptcy Court did not err in its consideration of the *Dordevic* factors. In *Dordevic*, the bankruptcy court "appl[ied] the common-law factors generally applied by federal courts to determine the existence of a nominee relationship," "[b]ecause there is no established test for this question under Florida law." 633 B.R. at 557. Other courts have similarly looked to federal law for guidance where the law of the forum state does not have a bright-line test for determining nominee ownership. *See id.* at 557–58 (collecting cases from Florida, Virginia, and Texas). Here, the parties do not dispute that while Delaware recognizes beneficial ownership claims, it has no accompanying bright-line test.[11] As such, the Bankruptcy Court did not err in applying the common-law factors discussed in *Dordevic*.

Nor did the Bankruptcy Court err in its analysis of the *Dordevic* factors. The court in *Dordevic* explained that "courts consider several factors in determining whether a titleholder is actually serving as a nominee for the benefit of another, including whether: (1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and (5) the transferor continues to exercise dominion and control over the property." 633 B.R. at 558 (citing *United States v. Szaflarski*, 614 F. App'x 836, 838–39 (7th Cir. 2015) (internal alterations and quotation marks omitted)). Regarding the first factor, the Bankruptcy Court observed that the Debtor's close relationship with the nominee (*i.e.*, his wife) is uncontested. Then, as to the second, third, and fifth factors, the Bankruptcy Court incorporated by reference its extensive prior

---

[11] Instead, Appellants argue that *Dordevic* is inapplicable because it is factually and procedurally inapposite. But the Court agrees with the Trustee that the specific facts at issue in *Dordevic* are immaterial. Indeed, the Bankruptcy Court relied on *Dordevic* not due to its factual similarity to the instant Adversary Proceeding, but rather, due to the five-factor common law test that it sets out regarding beneficial ownership claims. Thus, Appellants' assertions in this regard are unavailing.

discussion regarding the alter ego analysis, specifically as to: (a) Ms. Ngok's complete lack of knowledge and responsibility for the funding of Greenwich Land and its real estate transactions; (b) the Debtor's dominion and control over Greenwich Land; and (c) Greenwich Land's corporate form being used to shield assets from the Debtor's creditors, thereby frustrating collection efforts. In light of this, Appellants' assertion that the Bankruptcy Court "summarily conclude[ed]" that the Debtor beneficially owned Greenwich Land is again, a mischaracterization of the MSJ Order.[12] Rather, the Bankruptcy Court thoroughly examined the record evidence and the undisputed facts and accurately concluded that four of the five *Dordevic* factors support the Debtor's equitable ownership of Greenwich Land.  For these reasons, the Bankruptcy Court's order granting summary judgment on the Trustee's second claim is AFFIRMED.[13]

---

[12] Appellants do not cite to any authority barring or even criticizing the practice of incorporating by reference prior analysis.  And this argument is especially weak in light of Appellants' own repeated incorporation by reference of its prior arguments, to include their evidentiary objections.

[13] Appellants also argue that the Trustee lacks standing to prosecute his alter ego and beneficial ownership claims and that the Bankruptcy Court erred in concluding that "Section 544 of the Bankruptcy Code provides bankruptcy trustees with standing to bring reverse veil-piercing claims on behalf of creditors at large."  Appellant Br. at 42.   However, the Court need not determine this issue, because Appellants failed to raise this argument in the proceedings below. Indeed, "[g]enerally, a district court will not address arguments that were not presented to the bankruptcy court."  *In re IIG Glob. Trade Fin. Fund, Ltd.*, No. 23-CV-4350 (ER), 2024 WL 1134734, at *10 (S.D.N.Y. Mar. 15, 2024) (citing *Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006)); *In re Salander*, 503 B.R. 559, 569 (S.D.N.Y. 2013) ("[I]ssues not raised in bankruptcy court cannot be raised in first instance on appeal."); *see also Mhany Mgmt. v. Inc. Vill of Garden City & Garden City Bd. of Trustees*, 985 F. Supp. 2d 390, 411 (E.D.N.Y. 2013) ("Statutory standing arguments, unlike constitutional standing arguments, can be waived.") (citation omitted).  The Court further observes that Appellants do not refute the Trustee's waiver argument in their reply brief, and in fact, do not address the issue of standing at all.

**Conclusion**

For all of the foregoing reasons, the Court **AFFIRMS** in its entirety the order of the Bankruptcy Court granting summary judgment in favor of the Trustee.  Accordingly, the Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of September 2025.


 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE